UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

                                      Chapter 13

    Richard Kin Bong Chan,
                        Debtor.           Case No.: 16-70138-ast

------------------------------------------------------------X

## DECISION AND ORDER DENYING JP MORGAN CHASE BANK N.A.'S MOTION FOR SANCTIONS AND DISMISSING DEBTOR'S CHAPTER 13 CASE

***BACKGROUND***

On January 12, 2016, the above-captioned debtor, Richard Kin Bong Chan, ("Debtor"),

purportedly filed a *pro se* voluntary petition under chapter 13 of title 11 of the United States

Code (the "Bankruptcy Code"). [dkt item 1] Debtor's petition was prepared by Fitzhugh

Fenderson ("Mr. Fenderson"), who is not a lawyer, but admitted that he acts as a bankruptcy

petition preparer. Mr. Fenderson is currently a defendant in an adversary proceeding commenced

by the Office of the United States Trustee.[1]

On February 4, 2016, Debtor filed an emergency motion to impose the automatic stay

with respect to the Debtor and property located at 56 Kensington Circle, Manhasset, New York

11030 (the "Property"), supported by an affirmation of Debtor and a Memorandum of Law (the

"Emergency Motion"). [dkt item 10] The Emergency Motion was allegedly signed by Andrew

Squire, Esq. ("Mr. Squire"), acting as Debtor's attorney, and as notary to Debtor's signature on

the affirmation. The Emergency Motion made a number of allegations concerning an imminent

post-petition eviction of Debtor and his family, including his parents and 95 year old grandfather.

Given the allegations, the Court scheduled an emergency hearing for the next day, February 5

---

[1] On June 21, 2016, the Office of the United States Trustee commenced adversary proceeding number 16-08102
against Mr. Fenderson. Mr. Fenderson has not answered or otherwise responded to the adversary proceeding as of
the date of this decision and order.

(the "Hearing").

A substantial snow storm blanketed Long Island on the overnight between February 4 and 5.

On the morning of the February 5 hearing, JP Morgan Chase Bank, N.A. ("Chase") filed opposition to the Emergency Motion (the "Opposition"). [dkt items 13 & 14] The Opposition included a detailed account of the long running dispute between Chase, Debtor and the various occupants of the Property, including a 2007 judgment for foreclosure, a 2009 referee's sale and deed of the Property, a judgment of possession and warrant of eviction from 2014, and the scheduling of a January 12, 2016 lock out by the Nassau County sheriff. The Opposition also alleged that the lock out had actually concluded on the morning of January 12, prior to the 3:33 p.m. filing of this bankruptcy case later that day, as evidenced by a date stamped warrant of eviction and an affidavit of an employee of Chase.

On February 5, despite dangerous travel conditions, the Court conducted the Hearing. Following the Hearing, the Court made clear from the bench that no relief was being accorded to Debtor on an emergency basis, but did not issue an order at that time, and adjourned the hearing to March 3. On February 12, Chase filed a motion seeking a comfort order that the automatic stay of § 362(a) was not in effect due to a prior filing,[2] and also seeking sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 (the "Comfort Motion"), which was also set for hearing on March 3. [dkt item 17]

On February 12, the chapter 13 trustee filed a motion to dismiss, with a hearing also set for March 3. [dkt item 16]

On February 25, Mr. Squire filed a letter requesting an adjournment of the March 3

---

[2] Further, the automatic stay was not in effect because Chase took possession of the Property prior to the Petition Date.

hearing, due to a previously scheduled bicycle tour of New Zealand (the "Adjournment Request"). [dkt item 19] The Adjournment Request did not appear to be on consent of all the parties.

On March 2, the Court entered an order granting the Comfort Motion in part, stating that the automatic stay was not in effect pursuant to § 362(a), and adjourning the balance of the March 3 matters to April 7. [dkt item 21]

On April 7, the Court conducted a hearing at which Mr. Squire, Chase, the chapter 13 trustee and the United States Trustee (the "UST") appeared (the "April 7 Hearing"). At the April 7 Hearing, the Court was advised of certain troubling communications received by the UST from Mr. Squire, including Mr. Squire alleging he had in fact not signed the Emergency Motion. The Court denied the Emergency Motion, and scheduled an evidentiary hearing for May 5 on the sanctions portion of the Comfort Motion and the chapter 13 trustee's motion to dismiss (the "May 5 Hearing"). [dkt item 17]

On April 12, the UST filed a letter with exhibits detailing communications between Mr. Squire and Mr. Fenderson in connection with this bankruptcy proceeding (the "April Letter"). [dkt item 27]

On May 5, Debtor, Chase, the UST, the chapter 13 trustee, Mr. Squire and Mr. Fenderson appeared for the Hearing; Debtor and Mr. Fenderson testified. Mr. Squire made certain representations as an officer of the Court that he did not sign or authorize the use of his signature on the Emergency Motion. Mr. Fenderson's testimony is discussed below. The transcript of the May 5 Hearing is at docket item 31 (the "May 5 Tr.").

On May 6, the UST filed another letter, at the Court's direction, with an affirmation of Mr. Squire annexed, detailing further Mr. Squire's claim that he did not sign or authorize the use

of his signature in any of the pleadings in this bankruptcy case, including on the Emergency

Motion, other than on the Adjournment Request (the "May Letter").  [dkt item 29]

## *LEGAL ANALYSIS*

### *Rule 9011 Sanctions*

Chase seeks sanctions against Mr. Squire, alleging the he filed a frivolous pleading, the

Emergency Motion.  Rule 9011(a) of the Federal Rules of Bankruptcy Procedure provides:

> Every petition, pleading, written motion, and other paper, except a list, schedule, or
> statement, or amendments thereto, shall be signed by at least one attorney of record
> in the attorney's individual name.  A party who is not represented by an attorney
> shall sign all papers.

FED. R. BANKR. P. 9011(a).  Rule 9011(b) requires that an attorney or a party undertake a

reasonable investigation prior to filing papers, and that such persons not file papers which are

meritless, in bad faith, or filed for an improper purpose.[3]

Motions for sanctions are authorized by Rule 9011(c), which provides specific procedural

steps that must be followed for sanctions to be imposed.  These procedural steps are designed to

provide for resolution of sanctions issues without resorting to costly motion practice and judicial

intervention.  Specifically, Rule 9011(c) sets out a specific pre-filing procedure, often referred to

---

[3] 9011(b) provides that when an attorney or unrepresented party files a document or otherwise presents the
document to the court, he or she certifies that "to the best of the person's knowledge, information, and belief, formed
after an inquiry reasonable under the circumstances,—"

> 1.    "[I]t is not being presented for any improper purpose, such as to harass or to cause
> unnecessary delay or needless increase in the cost of litigation;"

> 2.    "[T]he claims, defenses, and other legal contentions therein are warranted by existing law
> or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the
> establishment of new law;"

> 3.    "[T]he allegations and other factual contentions have evidentiary support or, if specifically
> so identified, are likely to have evidentiary support after a reasonable opportunity for further
> investigation or discovery;" and

> 4.    "[T]he denials of factual contentions are warranted on the evidence or, if specifically so
> identified, are reasonably based on a lack of information or belief."

FED. R. BANKR. P. 9011(b).

as a safe harbor, to be followed by a party who seeks sanctions, and provides that a motion for sanctions may not be filed with the court unless the movant has served the proposed motion no less than twenty-one (21) days before filing, and the non-movant has failed to withdraw or correct the challenged matter; this safe harbor does not, however, apply if the offending paper is a bankruptcy petition.[4]

Here, two impediments exist that prevent this Court from imposing sanctions against Mr. Squire.

### i.    Mr. Squire neither signed nor filed the Emergency Motion.

First, after having fully reviewed the record of the proceedings in this case to date, this Court finds no basis to impose sanctions under Rule 9011 against Mr. Squire because he did not sign or file the Emergency Motion.

At the May 5 Hearing, Mr. Squire began by stating:

Good afternoon. My name is Andrew Squire. I've been an attorney for 30 years. I currently suffer memory loss. I have a doctor's report that I just received. It's dated 4/11/2016 and it says -- it's from my neurologist…. It says clinical indications, slowly developing memory loss. History of concussion in May 2012. For that reason, I basically am an appearance lawyer. I do appearances….

A bankruptcy case I would never, never have filed at this stage and at my condition. I believe, and I'm not saying it with any sort of bad will or bad faith, I believe that Mr. Fenderson filed this bankruptcy. Okay? And we're only here to straighten out

---

[4] 9011(c) states:

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How initiated

(A) By motion

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

FED. R. BANKR. P. 9011(c).

what happened because in the end the client is here who moved out of her house. I think it was an emergency bankruptcy made on a Thursday and with the appearance on a Friday. And I think Fitz called me up and said come into court on Friday. And when I came into court, the court led me to believe that I had filed the bankruptcy. I had never seen the bankruptcy papers. I don't know who filed, I don't really know who filed them. I've never seen any papers regarding this bankruptcy.

(May 5 Tr. at 5:17-25; 6:3-15)

Mr. Squire has been consistent in his statements that he did not sign the Emergency Motion. Attached to the April Letter is a letter dated April 5 from Mr. Squire in which Mr. Squire stated that "Mr. Fenderson filed a Motion for an Automatic Stay for and on behalf of the debtor and signed my name thereto, without my knowledge, permission or consent." In addition, in an e-mail from Mr. Squire to Mr. Fenderson dated February 20, 2016 time stamped 6:55 a.m., Mr. Squire demanded that Mr. Fenderson hire another attorney because he made him an attorney of record without his "knowledge, permission or consent." Another e-mail exchange between Mr. Squire and Mr. Fenderson on Sunday, March 6, 2016, time stamped 3:21 a.m., reiterates the fact that Mr. Fenderson signed Mr. Squire's name without his "knowledge, permission or consent." Attached to the May Letter is an affidavit of Mr. Squire reiterating the fact that he did not sign or authorize the signing of the pleadings in this bankruptcy case, other than a notice of his absence from the country on February 25, 2016. *See* May Letter, Mr. Squire Affidavit, ¶¶ 9-16.

Mr. Fenderson testified during the May 5 Hearing that he had signed the Emergency Motion on behalf of Mr. Squire:

THE COURT: I would like to know who signed the motion, who signed the memorandum of law. There's an affirmation in support of the order to show cause and there's a memorandum of law in support of motion. Who signed those, Mr. Fenderson? Who signed those, Mr. Fenderson?

MR. FENDERSON: Excuse me?

THE COURT: Who signed the affirmation in support of order to show cause that has Andrew Squire's name on it?

6

MR. FENDERSON: I believe I signed this one, the affirmation.

THE COURT: You signed on behalf of Mr. Squire?

MR. FENDERSON: Yes, I think -- yeah, I believe I signed this one on behalf of Mr. Squire.

THE COURT: Who signed the memorandum of law in support of motion that also has Mr. Squire's name typed on it?

MR. FENDERSON: Yes, I believe I also signed it on behalf of Mr. Squire.

(*See* May 5 Tr. at 41:14-25; 42:1-5).  However, while Mr. Fenderson acknowledged having prepared and signed the Emergency Motion, he did not concede having signed Mr. Squire's name without his consent, and in fact testified to having sent it to Mr. Squire for review prior to having filed it with this Court.  (*See* May 5 Tr. at30-32; 37-38).  Mr. Fenderson did, however, acknowledge having signed Mr. Squire's name as a notary to Debtor's affidavit made a part of the Emergency Motion, that Mr. Squire did not in fact notarize Debtor's signature, and that Debtor was not even present when Mr. Fenderson signed Mr. Squire's name as notary.

Q. Do you know Mr. Squire notarized this affidavit?

A. This affidavit? No. Mr. Squire -- when I prepared this document I told Mr. Squire that the document has to be notarized and he asked me if he'd ever met Mr. -- he said if he'd every met Mr. Chan. I told him yes because, you know, we did have a lot of different, how you say, cases. So I told him yes, you have met him. So he said -- you know, he gave me permission. He said as long as I've met him then, you know, you could have him sign it and use my notary and get it notarized. So --

Q. So it's your testimony that Mr. Squire gave you the permission to notarize Mr. Chan's signature?

A. Yes.

Q. When you notarized Mr. Chan's -- well, when you got the permission, for argument sake, from Mr. Squire to notarize Mr. 3 Chan's signature, was Mr. Chan present?

A.  No, Mr. Chan wasn't present.

\* \* \*

THE COURT: He's asking you whether you saw Mr. Chan sign this affidavit.

MR. FENDERSON: If I saw him sign it? No, I didn't see him sign it. No.

(*See* May 5 Tr. at 38:13-25; 39:1-4).

Having observed both Mr. Squire and Mr. Fenderson, and given the numerous inconsistencies in Mr. Fenderson's testimony, in spite of any memory challenges Mr. Squire may be experiencing in general, this Court finds credible Mr. Squire's repeated statements that he did not authorize Mr. Fenderson to sign his name to the Emergency Motion, and does not find credible Mr. Fenderson's assertion that he signed Mr. Squire's name with Mr. Squire's knowledge, permission or consent. Therefore, as Mr. Squire did not sign or authorize the signing of his name to the Emergency Motion, the Court has no basis to award sanctions in favor of Chase under Rule 9011.

### ii.      Chase failed to comply with Rule 9011(c)

Second, as a procedural matter, Chase failed to comply with the Rule 9011(c) "safe harbor" provision and failed to file the sanctions request as a separate motion. *See* FED. R. BANKR. P. 9011(c)(1)(A). This is true even though the Comfort Motion was filed under the exigency created by Debtor and Mr. Fenderson. However, because counsel for Chase did not comply with Rule 9011(c), it would be improper for this Court to award sanctions on Chase's request, even if sanctions were an appropriate remedy. *See In re Hoffman,* 403 B.R. 237 (Bankr. E.D.N.Y. 2009); *In re Baumblit* 251 B.R. 442, 443 (E.D.N.Y. 2000) ("Because Mr. Baumblit failed to comply with the separate notice provisions of Rule 9011, it was an abuse of discretion for the bankruptcy court to impose sanctions."), *aff'd on other grounds, In re Baumblit,* 15 F. App'x 30, 2001 WL 880872 (2d Cir. 2001); *In re Burns,* Case No. 08-75936 (AST), 2009 Bankr.

LEXIS 1797, at *2-4 (Bankr. E.D.N.Y. June 24, 2009).  Based upon the foregoing, the remaining

portion of the Comfort Motion is denied.

### *Mr. Squire's voluntary withdrawal from future appearances in EDNY bankruptcy court, except in narrow circumstances*

Section 105 of the Bankruptcy Code provides that "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No

provision of this title providing for the raising of an issue by a party in interest shall be construed

to preclude the court from, *sua sponte*, taking any action or making any determination necessary

or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11 U.S.C. § 105(a).  The court's inherent powers and 11 U.S.C. § 105 enable it to control its own

docket, including the power to regulate attorneys.  *See, e.g., United States v. Seltzer*, 227 F.3d 36,

41 (2d Cir. 2000) (noting a distinction between a court's use of its inherent authority to punish an

attorney for conduct related to representing a client, which requires an explicit bad faith finding,

and use of a court's inherent authority to punish the violation of a court order or other conduct

not undertaken on behalf of a client, which does not require a finding of bad faith); *In re*

*Franklin Indus. Complex, Inc.*, 386 B.R. 5, 10 (Bankr. N.D.N.Y. 2008) (internal citations and

quotations omitted); *In re Suprema Specialties, Inc.*, 330 B.R. 40, 45-46 (S.D.N.Y. 2005)

(recognizing the bankruptcy court's discretion to manage its docket).

Courts have relied on their inherent sanction authority to revoke an attorney's *pro hac*

*vice* admission, *Ryan v. Astra Tech, Inc.*, Case No. 13-2251, 2014 WL 6090701, at *4 (1st Cir.

Nov. 14, 2014), *In re Hake*, 348 F. App'x 80 (6th Cir. 2009), to disbar an attorney from

practicing in any court in the district, *In re Brown*, 408 B.R. 509, 527 (Bankr. D. Idaho 2009),

and to sanction an attorney for failing to correct erroneous filings.  *In re Green*, 422 B.R. 469,

475 (Bankr. S.D.N.Y. 2010).

In the Eastern and Southern Districts of New York, local district rules for attorney discipline provide the mechanics by which an attorney may be prohibited from practicing in either the district or bankruptcy courts.  *See* SDNY and EDNY Joint Local Civil Rule 1.5, Discipline of Attorneys (providing for a grievance committee to review and consider reprimand, admonition, censure, suspension or an order striking the name of the attorney from the roll of attorneys admitted to practice before these courts).

At the May 5 Hearing, the Court asked Mr. Squire to "give serious consideration" to voluntarily not appearing in any future bankruptcy proceedings.  Mr. Squire affirmed on the record that he would never appear in any bankruptcy court in any capacity in the future. Specifically, Mr. Squire stated:

> I will state on the record that I will as a 64-year-old semi-retired lawyer who does appearances only and I was kind of dragged into this case in the middle of the case by my client who said come to court tomorrow and I thought it was an appearance, and it turns out that somebody wrote my name, you know, on this case without my knowledge, permission, and consent, I have already decided prior to coming today I will never appear in any bankruptcy court in an official capacity again.

(*See* May 5 Tr. at 64:5-12).

Following the May 5 Hearing, Mr. Squire entered into a stipulation and order (the "Stipulation and Order") with the Office of the United States Trustee which was been "so ordered" by this Court on August 12, 2016; in the Stipulation and Order, Mr. Squire  affirmed that he has retired from practicing bankruptcy law in the bankruptcy courts for the Eastern District of New York, with very narrow exceptions[5].  [dkt item 35]

---

[5] The Stipulation and Order provides, *inter alia*:

> Squire has retired from the practice of Bankruptcy Law and therefore, as such, Squire no longer practices Bankruptcy Law and affirms to the Court that prior to said execution of this Stipulation, Squire has voluntarily ceased filing any petitions pursuant to the Bankruptcy Code before the United States Bankruptcy Court in the Eastern District of New York, and has ceased practicing Bankruptcy Law in Eastern District except for discreet court appearances assigned by other attorneys, and except for Andrew Squire's and/or Ilya Speranza's future bankruptcy petitions, if any.

***CONCLUSION***

Based on the foregoing, it is hereby

**ORDERED**, that the portion of the Comfort Motion seeking sanctions is denied; and it is further

**ORDERED**, that the Debtor's chapter 13 case is dismissed; and it is further

**ORDERED**, that, in accordance with 11 U.S.C. § 349, Debtor's case shall remain open and this Court shall retain jurisdiction over all matters arising in and arising out of adversary proceeding number 16-08102; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Order on Debtor, Debtor's Counsel, Chase, Chase's Counsel, the Chapter 13 trustee, the Office of the United States Trustee and all parties who filed a notice of appearance in the case.



**Dated: August 15, 2016**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**